IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
James W. CASSIDY, Attorney at Law.

Supreme Court

*No. 91–2285–D. Submitted on briefs October 8, 1992.—Decided
November 12, 1992.*

(Also reported in 493 N.W.2d 362.)

For the Board of Attorneys Professional Responsibility there were briefs by *John W. Roethe,* Edgerton.

For James W. Cassidy there was a brief by *Daniel W. Hildebrand* and *Ross & Stevens, S.C.*, Madison.

Amicus curiae brief was filed by *William T. Read*, Madison for Lawyers Concerned For Lawyers, Inc.

PER CURIAM. *Attorney disciplinary proceeding; attorney's license revoked.*

This is an appeal by the Board of Attorneys Professional Responsibility (Board) from the referee's recommendation of discipline to be imposed upon Attorney James W. Cassidy for his professional misconduct. That misconduct included conversion of client funds to be held in trust, failure to maintain adequate trust account records and borrowing money from clients without giving them an opportunity to obtain the advice of independent counsel in those loan transactions. As discipline for that misconduct, the referee recommended that the court suspend Attorney Cassidy's license to practice law in Wisconsin for an indefinite period and permit him to apply for license reinstatement after one year, provided the Board certifies that he is physically and mentally fit to practice law and that he has repaid his indebtedness to a former client from whom he had borrowed money. The Board contended that the seriousness of Attorney Cassidy's misconduct requires revocation of his license to practice law.

We determine that the nature and extent of Attorney Cassidy's professional misconduct calls for the revocation of his license. His taking of client funds committed to his trust, his self-dealing with clients and misrepresentations to them and his use of his client trust account to shield his own funds from creditors establish his unfitness to be licensed to represent others in the legal system. By that misconduct, Attorney Cassidy has

demonstrated a propensity to be dishonest, which is incompatible with the legal profession.

Attorney Cassidy was admitted to practice law in Wisconsin in 1954 and practiced in Madison prior to the temporary suspension of his license the court imposed in October, 1992, in another disciplinary proceeding. He has not previously been the subject of an attorney disciplinary proceeding. The referee in this proceeding, Attorney Rudolph P. Regez, made the following findings of fact, which are not in dispute.

In June, 1988 a man retained Attorney Cassidy to represent him in a legal separation action. During the course of the action, the client gave Attorney Cassidy a $700 check made payable to Attorney Cassidy's trust account for payment of a bill the parties owed to a clinic. Attorney Cassidy deposited that check into his business account rather than into his trust account and used the client's funds for his own business purposes.

The client was held in contempt of court for failure to pay the bill and subsequently paid it from other funds. Thereafter, he asked Attorney Cassidy for the return of the $700 and, when it was not forthcoming, filed a grievance with the Board. Attorney Cassidy then sent the client a trust account check for $700 drawn on his trust account, although apparently on another client's funds, as the client's money was no longer in that account. Responding to the Board's inquiry into the grievance, Attorney Cassidy stated that he had deposited the $700 check into his trust account and the money was not disbursed because the client had given no instructions concerning what to do with it.

The referee concluded that Attorney Cassidy's deposit of the client's funds into his business account constituted a failure to hold client funds in trust, in

violation of SCR 20:1.15(a);[1] his statements to the Board that he had deposited the check into his trust account constituted a misrepresentation, in violation of SCR 22.07(2);[2] his conversion of the client's $700 to meet business obligations violated SCR 20:8.4(c).[3]

In the course of its investigation of this matter, the Board examined Attorney Cassidy's trust account records and bank statements covering the period from November, 1988 through September, 1990. Attorney Cassidy stated that he maintained no trust account cash receipts journal, no trust account ledger and no disbursement journal during that time and that his record-keeping consisted of notations he made in each client file of

[1] SCR 20:1.15 provides:

**Safekeeping property.**

(a) A lawyer shall hold in trust, separate from the lawyer's own property, property of clients or third persons that is in the lawyer's possession in connection with a representation. . . .

[2] SCR 22.07 provides:

**Investigation.**

. . .

(2) During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

[3] SCR 20:8.4 provides:

**Misconduct**

It is professional misconduct for a lawyer to:

. . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

amounts received from and disbursed to or for clients. The Board also discovered that amounts noted as belonging to clients were not always on deposit in Attorney Cassidy's trust account. Notwithstanding those facts, Attorney Cassidy certified to the State Bar in 1988 and 1989 that he had complied with the trust account record-keeping requirements of SCR 20:1.15(e).

The referee concluded that Attorney Cassidy's failure to maintain complete trust account records violated SCR 20:1.15(e) and that his certifications to the State Bar constituted misrepresentations, in violation of SCR 20:8.4(c), and also violated the requirement of SCR 20:1.15(g).[4]

---

[4] SCR 20:1.15 provides:

**Safekeeping property.**

. . .

(e) Complete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation. Complete records shall include: (i) a cash receipts journal, listing the sources and date of each receipt, (ii) a disbursements journal, listing the date and payee of each disbursement, with all disbursements being paid by check, (iii) a subsidiary ledger containing a separate page for each person or company for whom funds have been received in trust, showing the date and amount of each receipt, the date and amount of each disbursement, and any unexpended balance, (iv) a monthly schedule of the subsidiary ledger, indicating the balance of each client's account at the end of each month, (v) a determination of the cash balance (checkbook balance) at the end of each month, taken from the cash receipts and cash disbursement journals and a reconciliation of the cash balance (checkbook balance) with the balance indicated in the bank statement, and (vi) monthly statements, including canceled checks, vouchers or share drafts, and duplicate deposit slips. A record of all property other than cash which is held in trust for clients or third persons, as required by paragraph (a) hereof, shall also be maintained. All trust account records shall be deemed to have public aspects as related to the lawyer's fitness to practice.

. . .

The Board's examination also disclosed that Attorney Cassidy's trust account balance was, at times, far below the amount of client funds he was to be holding in trust. For example, the trust account balance was $.77 on October 12, 1989, at which time Attorney Cassidy had been entrusted with $11,900 of one client's funds and $3,000 of another's; on July 17, 1989 his trust account balance was approximately $35, when he had been entrusted with funds of three clients totaling $21,400. Admitting that he had used client funds to pay his own personal and business expenses, Attorney Cassidy stated that, in all, he had converted funds of five clients amounting to $28,100 and that he has repaid all of those funds to the clients.

During the period from November, 1988 through May, 1990 Attorney Cassidy made 68 deposits into his trust account totaling over $162,000 without making any reference to the source of those funds. At the time of the disciplinary hearing, he was unable to identify the source of each of those deposits. Moreover, during that period, Attorney Cassidy borrowed more than $120,000 from individuals, some of which money he deposited in his trust account, and was unable to identify which of the deposits represented loan proceeds and which were client funds. Attorney Cassidy stated that he had deposited the proceeds of personal loans into his client trust account in

(g) A member of the State Bar of Wisconsin shall file with the State Bar annually, with payment of the member's State Bar dues or upon such other date as approved by the Supreme Court, a certificate stating whether the member is engaged in the private practice of law in Wisconsin and, if so, the name of each bank, trust company, credit union or savings and loan association in which the member maintains a trust account, safe deposit box, or both, as required by this section. Each member shall explicitly certify therein that he or she has complied with each of the record-keeping requirements set forth in paragraph (e) hereof. . . . The filing of a false certificate is unprofessional conduct and is grounds for disciplinary action. . . .

order to shield those funds from creditors, as his other bank accounts were then subject to garnishment by the Internal Revenue Service. In addition to his failure to record the source of funds he deposited in his trust account, Attorney Cassidy was unable to identify which of the 136 trust account checks he had drawn to himself totaling $105,620 were for fees to which he was entitled and which were withdrawals of loan proceeds.

The referee concluded that Attorney Cassidy's conversion of client funds held in trust for five clients constituted conduct involving dishonesty, in violation of SCR 20:8.4(c); his commingling of client funds with his personal funds violated SCR 20:1.15(a); his depositing of personal funds into his trust account to shield them from creditors constituted conduct involving deceit, in violation of SCR 20:8.4(c).

Attorney Cassidy testified that as of January 8, 1991 he had failed to timely file federal and state income tax returns for 1989 but he did so at some time prior to January 22, 1992. The referee concluded that his failure to timely file income tax returns and pay the tax due violated the court's rule enunciated in *State v. Roggensack,* 19 Wis. 2d 38, 119 N.W.2d 412 (1963).

The remaining misconduct considered in this proceeding concerns Attorney Cassidy's having obtained loans from three clients without disclosing to them the conflict of interest inherent in such dealings and without giving them the opportunity to obtain independent advice in the transactions. In January, 1987, he represented a woman in the sale of her home and when she received the proceeds of the sale, he asked her if he could borrow money from her to pay large bills he had incurred as a result of surgery. The client loaned him $5,000 and he executed a promissory note payable six months thereafter. Attorney Cassidy and the client extended that note

for an additional eight months. Thereafter, Attorney Cassidy altered the terms of the note to provide for monthly principal payments but the client did not sign that amendment and had not given written consent to the revision. As of April 1, 1991, Attorney Cassidy had repaid the client $1,400, leaving an unpaid balance of $6,150.

The referee concluded that Attorney Cassidy's failure to give the client a reasonable opportunity to seek the advice of independent counsel when he proposed to borrow money from her and when he revised the terms of the note and his failure to obtain her written consent to the revised terms violated SCR 20:1.8(a)(2) and (3),[5] as well as former SCR 20.27.

In 1987, a man retained Attorney Cassidy to represent him in a personal injury matter. Soon thereafter, the client gave Attorney Cassidy several settlement checks he had received pursuant to a divorce judgment. Attorney Cassidy told the client he could invest the settlement money for him at a stated rate of interest for six months while the client considered how to invest the funds. Several months after the client had given Attorney Cassidy the proceeds of the divorce settlement, Attorney Cassidy executed a promissory note in the amount of $21,000 at the rate of interest he had stated to the client concerning the proposed investment of his funds. Prior to giving that note to the client, however,

---

[5] SCR 20:1.8 provides:

**Conflict of interest: prohibited transactions**

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

. . .

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.

Attorney Cassidy did not disclose to the client that he had taken the funds as a personal loan.

Attorney Cassidy failed to pay the note when due and four months later executed a second note in the amount of $16,500. At no time did Attorney Cassidy tell the client that he had a conflict of interest in either loan transaction or advise the client that he should seek separate legal counsel in the matter. Moreover, Attorney Cassidy had not obtained the client's consent in writing to the personal loan at the outset. By the time of the disciplinary hearing, Attorney Cassidy had repaid the client in full.

The referee concluded that Attorney Cassidy's use of the client's settlement funds as a personal loan after representing to the client that he would invest those funds on the client's behalf constituted conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of former SCR 20.04(4), and that his entering into a business transaction with the client without obtaining the client's written consent and giving the client a reasonable opportunity to seek the advice of independent counsel violated SCR 20:1.8(a)(2) and (3).

In 1988, Attorney Cassidy represented a man who was the beneficiary of his father's estate. When the client received a settlement check from the estate, Attorney Cassidy asked him to lend him $2,500, for which he executed a promissory note. Attorney Cassidy did not obtain the client's written consent to the conflict of interest involved in the transaction and did not provide the client an opportunity to seek the advice of independent legal counsel. At the disciplinary hearing, the client testified that $50 of the amount remained unpaid.

In considering the discipline to recommend as a sanction for the totality of Attorney Cassidy's misconduct, the referee noted the following mitigating factors,

608

which he termed "compelling": Attorney Cassidy's remorse and admitted shame, his repayment of the client loans, his restitution of all trust funds without loss to clients other than their loss of the use of their funds, his medical condition that led to heart surgery and his alcoholism. The referee deemed Attorney Cassidy's misrepresentation to the Board concerning the deposit of client funds into his trust account mitigated by the "chaotic" condition of that account and Attorney Cassidy's records.

In his report, the referee addressed Attorney Cassidy's attempt to establish that his misconduct resulted from alcoholism. The referee noted that Attorney Cassidy's contention was controverted by the testimony of a doctor who, while confirming that Attorney Cassidy is an alcoholic, was unable to conclude that his condition caused his trust fund conversions or other misconduct. The doctor stated that medical tests established Attorney Cassidy's alcoholism but "in no way did his misconduct result from that disease." Upon the record, then, the referee concluded that Attorney Cassidy's actions were the result of desperate financial circumstances: his house and car were subject to foreclosure and repossession and he was the defendant in numerous legal actions, which resulted in unsatisfied money judgments against him.

Expressing his belief that Attorney Cassidy's misconduct calls for a "supervisory suspension" rather than license revocation, the referee recommended that Attorney Cassidy's license be suspended indefinitely and that he be permitted to apply for reinstatement after one year, provided the Board certifies that he is physically and mentally fit to practice law and that he has satisfied his indebtedness to the client whose loan he has not fully

repaid. The referee also recommended that Attorney Cassidy be required to pay the costs of this proceeding.

In its appeal from that recommendation, the Board contended that, by converting or otherwise misusing client funds in large amounts and over a long period of time, Attorney Cassidy established a pattern of conduct amounting to theft. Further, the Board argued the egregious nature of Attorney Cassidy's solicitation of loans from persons who had placed their trust in him by retaining him as their attorney. In order to obtain money, Attorney Cassidy induced clients to make loans to him without first advising them of his conflict of interest in the proposed transactions and without advising them of their need to get independent legal advice and without giving them an opportunity to procure independent counsel to advise them. In one case, the Board noted, Attorney Cassidy made an outright misrepresentation to a client to induce the client to give him money, telling the client he would invest the client's funds for him, when in fact he "borrowed" the money without informing the client until several months later.

In respect to Attorney Cassidy's medical condition, the Board took the position that the referee improperly considered his alcoholism a mitigating factor for the reason that it was not found to be the cause of his misconduct. Indeed, the referee noted the medical testimony that Attorney Cassidy's misconduct was not caused by alcoholism. Further, the Board emphasized, the court has refused to consider alcoholism a mitigating factor in cases involving an attorney's misappropriation of client funds held in trust.

On the basis of prior cases, the Board asserted that when alcoholism has been considered in mitigation of the severity of discipline to be imposed for an attorney's misconduct, the attorney was a recovered or recovering

alcoholic who had recognized the problem, sought treatment for it and established a period of abstinence from alcohol. Here, however, the doctor testified that Attorney Cassidy had not "come to grips" with his alcoholism, had not sought medical treatment, was not abstaining from alcohol and had not been identified as a recovered or a recovering alcoholic. The doctor further testified that there was no certainty that Attorney Cassidy's misconduct would not recur.

The Board correctly asserted the requirement of causation for alcoholism properly to be considered a mitigating factor in attorney misconduct. *See, Disciplinary Proceedings Against Glasschroeder,* 113 Wis. 2d 672, 335 N.W.2d 621 (1983), *Disciplinary Proceedings Against Peckham,* 115 Wis. 2d 494, 340 N.W.2d 198 (1983), *Disciplinary Proceedings Against Swartwout,* 116 Wis. 2d 380, 342 N.W.2d 406 (1984), *Disciplinary Proceedings Against Wood,* 122 Wis. 2d 610, 363 N.W.2d 220 (1985), and *Disciplinary Proceedings Against Fay,* 123 Wis. 2d 73, 365 N.W.2d 13 (1985). Attorney Cassidy argued unsuccessfully that the referee's consideration of his alcoholism as a mitigating factor was proper, for he could not contend that the alcoholism was found to have caused his misconduct but only that, as an addiction specialist testified, it played a role in the misconduct and was a factor in his behavior.

Moreover, Attorney Cassidy's assertion that he has attended meetings of Lawyers Concerned for Lawyers and, in most instances, has avoided drinking is unpersuasive in light of the report of the addiction specialist who examined Attorney Cassidy on January 10, 1992 prior to the disciplinary hearing and noted that, as of that time, Attorney Cassidy had not made any effort to address his alcohol problem.

■ While the court is sensitive to the problems of the attorney suffering from alcoholism and, under appropriate circumstances, takes into consideration in imposing discipline the effect of that discipline to encourage the rehabilitation of attorneys who are alcoholics, the facts before us do not support Attorney Cassidy's request that we do so here by accepting the referee's disciplinary recommendation. Attorney Cassidy's multiple acts of professional misconduct share a common basis: dishonesty. That dishonesty has not been shown to have been caused by his alcoholism. Moreover, Attorney Cassidy could not demonstrate that he is seriously undergoing treatment and has achieved any degree of success in being rehabilitated. The protection of the public from Attorney Cassidy's dishonesty and from similar misconduct by other attorneys demands that Attorney Cassidy's license to practice law be revoked.

IT IS ORDERED that the license of James W. Cassidy to practice law in Wisconsin is revoked, effective the date of this order.

IT IS FURTHER ORDERED that within 60 days of the date of this order James W. Cassidy pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding.

IT IS FURTHER ORDERED that James W. Cassidy comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

ABRAHAMSON, J., took no part.