In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
John F. SCANLAN, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Appellant,

v.

John F. SCANLAN, Respondent-Respondent.

Supreme Court

*No. 2004AP1930–D. Oral argument January 12, 2006.
—Decided May 5, 2006.*

2006 WI 38

(Also reported in 712 N.W.2d 877.)

For the complainant-appellant there were briefs by *Robert G. Krohn* and *Roethe Krohn Pope LLP,* Edgerton, and oral argument by *Robert G. Krohn.*

For the respondent-respondent there was a brief by *Daniel W. Hildebrand* and *DeWitt Ross & Stevens S.C.,* Madison, and oral argument by *Daniel W. Hildebrand.*

¶ 1. PER CURIAM. The Office of Lawyer Regulation (OLR) seeks review of a referee's report and recommendation that Attorney John F. Scanlan's license to practice law be suspended for 180 days, that he pay restitution of $2000 plus interest to the Wisconsin Lawyers' Fund for Client Protection and restitution of $3086.67 plus interest to a former client, and that he bear the costs of these proceedings.

¶ 2. In July 2004 the OLR filed a 22–count complaint alleging misconduct during 2000 and 2002 with respect to Attorney Scanlan's handling of nine client matters. Attorney Scanlan filed a responsive pleading admitting many of the fact allegations and several rule violations, thus eliminating the need for a hearing on the admitted matters. Following a hearing on the remaining counts, the referee filed a report and recommendation on August 8, 2005, finding misconduct as charged in all but four of the counts.

¶ 3. The OLR appeals and challenges the referee's conclusions with respect to three dismissed counts and the recommended 180–day license suspension. The OLR claims the referee erroneously concluded: (1) because SCR 22.26(1) imposes no duties following an administrative license suspension for dues nonpayment, the OLR failed to prove Count 2; (2) Attorney Scanlan's conversion of $3086.67 of his client's funds

33

did not violate SCR 20:8.4(c) and, therefore, the OLR did not meet its burden of proof with respect to Count 18; (3) because Attorney Scanlan's unauthorized transfer and use of funds from his client trust account failed to support a violation of SCR 20:8.4(c), the OLR did not prove Count 19; and (4) Attorney Scanlan's violations justify only a 180–day suspension. The OLR seeks to overturn the referee's dismissal of Counts 2, 18, and 19, and seeks a two-year license suspension.

¶ 4. Because we conclude the referee erred in determining that the OLR did not meet its burden of proof, we overturn the referee's dismissal of Counts 2, 18, and 19. While we agree with the referee's determination that significant mitigating factors obviate the need for the two-year suspension sought by the OLR, we conclude that the seriousness of Attorney Scanlan's misconduct warrants a full six-month license suspension, rather than the recommended 180 days. Consequently, Attorney Scanlan will need to petition for reinstatement to practice law in Wisconsin.

¶ 5. In all other respects, we agree with the referee's findings of fact and conclusions of law, and we adopt them. We further conclude that Attorney Scanlan should make restitution of $2000 plus interest to the Wisconsin Lawyers' Fund for Client Protection, and $3086.67 plus interest to H.V.R., a former client, and that Attorney Scanlan should bear the costs of these proceedings totaling $14,201.16.[1]

## I. BACKGROUND

¶ 6. Attorney Scanlan was licensed to practice law in 1992 and admitted to the Wisconsin State Bar in

---

[1] The OLR incurred costs before the appeal amounted to $8774.17. The appellate costs amounted to $5426.99 as of January 19, 2006.

1997. He has not previously been disciplined. In 2002 he closed his solo practice in Door County and moved to Illinois where he practices as in-house counsel.

## A. Misconduct Charges

### 1. The R.M. Client Matter

¶ 7. Counts 1—3 alleged that while subject to an administrative law license suspension, Attorney Scanlan continued to practice law, giving rise to violations of SCR 20:1.4(a) and (b),[2] SCR 22.26(1),[3] and SCR

---

[2] SCR 20:1.4(a) and (b) state: Communication.

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[3] SCR 22.26(1) states in relevant part: Activities following suspension or revocation.

(1) On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall do all of the following:

(a) Notify by certified mail all clients being represented in pending matters of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation.

(b) Advise the clients to seek legal advice of their choice elsewhere.

(c) Promptly provide written notification to the court or administrative agency and the attorney for each party in a matter pending before a court or administrative agency of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation. The notice shall identify the

35

22.03(2).[4] In August 2002 R.M. was charged with second offense operating while intoxicated and operating while revoked, and she retained Attorney Scanlan to represent her. The referee found that while Attorney Scanlan's law license was administratively suspended from October 31, 2002, to November 20, 2002, for failure to pay required bar dues and assessments, a scheduled pretrial was held on November 18 for R.M.'s matter. The district attorney's office had checked a court or state bar Web site and learned that Attorney Scanlan's law license had been suspended. However, Attorney Scanlan never informed the district attorney's office or local judges that he had been administratively suspended.

¶ 8. The referee specifically found that Attorney Scanlan did not attend R.M.'s scheduled pretrial conference because at that point he knew his license had been temporarily suspended. R.M. appeared unrepresented at the pretrial conference. The pretrial conference evolved into a plea hearing during which R.M. pled guilty to a charge of operating under the influence of an intoxicant.

---

successor attorney of the attorney's client or, if there is none at the time notice is given, shall state the client's place of residence.

[4] SCR 22.03(2) states: Investigation.

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

¶ 9. R.M. filed a grievance with the OLR. The referee found Attorney Scanlan did not respond to two OLR letters, but responded to a third, after he had sought reinstatement from a temporary suspension occasioned by his non-cooperation in another OLR grievance investigation.

¶ 10. As to Count 1, relating to Attorney Scanlan's obligation to keep his client reasonably informed, the OLR agreed that because R.M. failed to appear at the disciplinary hearing although subpoenaed, the OLR did not meet its burden of proof. Therefore, Count 1 was dismissed.

¶ 11. The referee next determined the OLR did not meet its burden to show a violation of SCR 22.26(1) as charged in Count 2. Count 2 alleged that by failing to notify the court, the district attorney's office and his client of his administrative license suspension and inability to practice law, Attorney Scanlan violated SCR 22.26(1), requiring notification to clients and others of his suspension.

¶ 12. The referee concluded that because SCR 22.26(1) does not apply to an administrative license suspension, the OLR failed to meet its burden of proof. The referee determined: "[Attorney] Scanlan argued persuasively that SCR 22.26(1) does not apply to administrative suspensions based upon a lawyer's failure to pay State bar dues pursuant to SCR 10.03(6) because it is not a Supreme Court suspension nor revocation." Therefore, the referee dismissed Count 2.

¶ 13. As to Count 3, by not filing timely responses to the OLR's requests, the referee concluded Attorney Scanlan violated SCR 22.03(2), requiring full disclosure of all facts pertaining to alleged misconduct within 20 days of the request.

### 2. The J.K. Client Matter

¶ 14. Counts 4—7 involved Attorney Scanlan's failure to deposit an advance fee in his trust account and failure to return an unearned fee to his client, J.K., giving rise to violations of former SCR 20:1.15(a),[5] SCR 20:1.16(d),[6] SCR 22.03(2), and SCR 22.03(6).[7]

¶ 15. The referee found that in October 2001 J.K. retained Attorney Scanlan in a divorce matter and paid a $2500 retainer as an advance toward hourly fees, which Attorney Scanlan deposited in his business account. Approximately one week later, J.K. notified Attorney Scanlan that she did not wish to proceed with the divorce. Eventually, J.K. hired another attorney to recover the $2500. Attorney Scanlan told J.K.'s attorney

---

[5] Former SCR 20:1.15 applies to misconduct committed prior to July 1, 2004. Former SCR 20:1.15(a) provided in relevant part that "[a] lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity."

[6] SCR 20:1.16(d) provides: Declining or terminating representation.

> (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

[7] SCR 22.03(6) provides in relevant part: Investigation.

> (6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

he would send a check and an accounting within a week but failed to do so. A grievance was filed on J.K.'s behalf and the OLR sent two letters to Attorney Scanlan, to which he did not respond. Attorney Scanlan eventually sent an accounting to J.K.'s attorney as well as a refund of $1990.

¶ 16. Attorney Scanlan did not respond to the OLR's request for information with which he was personally served. As a result, after this court issued an order to show cause, Attorney Scanlan's license was temporarily suspended on January 14, 2003. The OLR subsequently reported that Attorney Scanlan had responded to its request for information and Attorney Scanlan's license was reinstated on April 29, 2003.

¶ 17. In May 2003 the OLR again inquired whether Attorney Scanlan had deposited J.K.'s $2500 retainer into his trust account. Attorney Scanlan did not respond until August 2003 after the OLR had written another letter and Attorney Scanlan had asked for two extensions. Based on hearing testimony the referee found Attorney Scanlan never put J.K.'s $2500 retainer fee in his trust account.

¶ 18. As to Count 4, the referee concluded that Attorney Scanlan had an absolute duty to deposit the $2500 advance into his trust account and by failing to do so, he violated former SCR 20:1.15(a), providing that a lawyer must hold a client's property in trust, separate from the lawyer's own property.

¶ 19. As to Count 5, the referee concluded that Attorney Scanlan was obliged to refund J.K.'s unearned fees and by failing to do so for more than a year after termination of the client relationship, Attorney Scanlan violated SCR 20:1.16(d), providing that upon termination of representation, the attorney should take reason-

able steps to protect a client's interests, including refunding unearned advanced fees.

¶ 20. With respect to Count 6, it was stipulated that by failing to provide a written response to J.K.'s grievance for over seven months after it was due, causing Attorney Scanlan's license to be temporarily suspended for non-cooperation, Attorney Scanlan violated SCR 22.03(2), requiring timely disclosure.

¶ 21. Concerning Count 7, the referee determined Attorney Scanlan's failure to respond timely to the OLR violated SCR 22.03(6), providing it is misconduct to willfully fail to provide information during an OLR investigation.

### 3. The T.V. Client Matter

¶ 22. Counts 8 and 9 alleged that Attorney Scanlan practiced law during a time that his law license was administratively suspended, giving rise to violations of SCR 10.03(6),[8] SCR 20:8.4(f),[9] and SCR 22.03(2). In September 2002 T.V. was charged with misdemeanor bail jumping and on September 23, 2002, Attorney Scanlan entered a notice of appearance on T.V.'s behalf.

¶ 23. The referee determined, based on agreed upon facts, that due to Attorney Scanlan's failure to pay

---

[8] SCR 10.03(6) provides: Membership.

> (6) Penalty for nonpayment of dues. If the annual dues or assessments of any member remain unpaid 120 days after the payment is due, the membership of the member may be suspended in the manner provided in the bylaws; and no person whose membership is so suspended for nonpayment of dues or assessments may practice law during the period of the suspension.

[9] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

dues and assessments, his license was suspended on November 1, 2002. During his period of suspension, on November 6, 2002, Attorney Scanlan appeared in court and entered a guilty plea on behalf of his client, T.V. It is undisputed that Attorney Scanlan had not received a letter notifying him of his suspension at that time. After paying his dues and assessments, Attorney Scanlan's license was reinstated on November 20, 2002. Attorney Scanlan did not respond to two investigative requests regarding this matter, but responded in April 2003 while seeking reinstatement from temporary suspension.

¶ 24. The referee concluded as to Count 8 that the OLR failed to meet its burden of proof "for the same reasons it failed to meet its Burden of Proof in count #2" and therefore, dismissed Count 8.[10]

¶ 25. As to Count 9, because Attorney Scanlan failed to provide information regarding the grievance for over three months after a response was due, the referee found that Attorney Scanlan violated SCR 22.03(2), requiring timely disclosure.

4. The R.J. Client Matter

¶ 26. Count 10 alleged that Attorney Scanlan violated SCR 20:1.1[11] involving a collection matter. The referee determined, based on agreed upon facts, that in April 2001 Attorney Scanlan had agreed to represent R.J. in a civil lawsuit and made a brief appearance but failed to appear at trial, which proceeded in his client's

---

[10] The OLR does not appeal the dismissal of Count 8.

[11] SCR 20:1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

absence and resulted in a judgment against R.J. for interest, attorney fees and costs, and which assessed fees and costs personally against Attorney Scanlan. The referee found the circuit court granted attorney fees and costs on the ground that Attorney Scanlan's continuance of R.J.'s defense following discovery was frivolous. The referee concluded that by failing to determine whether his client had a viable defense, failing to file an amendment to his client's pro se answer and to respond to the cross-claim, or alternatively seek settlement, Attorney Scanlan failed to provide competent representation, contrary to SCR 20:1.1.

### 5. The District Attorney Matter

¶ 27. Count 11 alleged that the Door County District Attorney filed a grievance relating to several criminal cases that formed a basis for Attorney Scanlan's violation of SCR 22.03(2). The Door County Assistant District Attorney reported to the OLR that several criminal defendants had complained to the district attorney's office about Attorney Scanlan's representation. The OLR wrote four letters of inquiry to Attorney Scanlan, who did not respond. Finally, in April 2002 the OLR sought temporary suspension for noncooperation and this court issued an order to show cause. Attorney Scanlan failed to respond within the deadline, but did so before the suspension order was issued and as a result his license was not suspended. Attorney Scanlan agreed, and the referee concluded, this conduct violated 22.03(2), requiring full timely disclosure of facts regarding misconduct.

### 6. The M.M. Client Matter

¶ 28. Counts 12—14 involved a family law matter in which Attorney Scanlan was alleged to have violated

SCR 20:1.3,[12] former SCR 20:1.15(a), and SCR 20:1.16(d). Attorney Scanlan agreed to represent M.M. to seek an amendment to an existing custody and placement order. In April 2002 M.M. paid an advance of $2000, which Attorney Scanlan placed in his business checking account rather than his client trust account. Attorney Scanlan closed his Wisconsin office in July 2002 and moved to Illinois without telling M.M., or providing contact information to him. Attorney Scanlan took no steps to amend the existing custody and placement order and did not contact M.M. or refund any part of the $2000 advance fee, or return documents M.M. had left with him.

¶ 29. The referee found that the $2000 fee was an advance against hourly fees and was deposited in Attorney Scanlan's business, rather than trust account. Attorney Scanlan did not prepare a fee agreement. Absolutely no work was done for the $2000 and eventually M.M. applied for and received $2000 from the Wisconsin Lawyers' Fund for Client Protection.

¶ 30. Attorney Scanlan agreed, as to Count 12, that his conduct violated SCR 20:1.3, requiring counsel to represent a client with reasonable diligence and promptness. As to Count 13, the referee concluded that by failing to deposit the $2000 advance in his trust account, Attorney Scanlan violated former SCR 20:1.15(a), providing counsel must hold a client's property in trust. As for Count 14, Attorney Scanlan agreed, and the referee concluded, that by moving to Illinois without notice and without returning papers or the $2000 advance fee, Attorney Scanlan violated 20:1.16(d),

[12] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

43

providing upon termination of representation, counsel shall take reasonable steps to protect his client's interests.

### 7. The H.V.R. Client Matter

¶ 31. Counts 15—20 alleged violations of former SCR 20:1.15(a), former SCR 20:1.15(b),[13] and SCR 20:8.4(c),[14] in collection matters that Attorney Scanlan handled for a business, H.V.R. Attorney Scanlan arranged to retain one-third of any amount he collected as a fee. These counts pertain to Attorney Scanlan's conversion of client funds, mishandling of payments, and his poor recordkeeping.

¶ 32. The referee made numerous findings with respect to Attorney Scanlan's handling of client funds, including that Attorney Scanlan deposited six checks totaling $1000 belonging to H.V.R., into his business account, rather than his trust account.[15] The referee also found that between August 16, 2001, and September 14, 2001, Attorney Scanlan made eight telephone

---

[13] Former SCR 20:1.15(b) states: Safekeeping property.

> (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

[14] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[15] The investigator testified that this amount was "pretty much used up within the first four days after it was deposited to his business account."

transfers from his client trust account to his business checking account and, although he should have been holding $820 in his trust account for H.V.R., the balance in his trust account fell to $333.03.[16] The referee also found that on August 21, 2001, Attorney Scanlan overdrew his business checking account and it continued in overdraft status until August 28, 2001.

¶ 33. The Door County Sheriff's Department opened an investigation regarding Attorney Scanlan's handling of H.V.R.'s funds and provided the OLR with a copy of its file. In May 2003 the OLR requested Attorney Scanlan to provide an accounting of all funds he had received on behalf of H.V.R., and provide complete trust account records from January 1, 2001, through May 30, 2002, but Attorney Scanlan did not respond. After further requests, Attorney Scanlan provided responses, but omitted documentation. At one point the OLR inquired whether Attorney Scanlan had disbursed to H.V.R. two-thirds of the trust account deposits made for its benefit on three specific dates and Attorney Scanlan responded that his records were not clear and he did not have copies of correspondence which would permit him to answer.

¶ 34. The referee also found that the trust account records Attorney Scanlan did provide revealed among other things that some of the deposits to the trust account appeared to represent payment of fees that had already been earned and billed, and therefore,

---

[16] The investigator testified to the effect that based on her review, between November 1, 2000, and June 30, 2002, Attorney Scanlan made 33 telephone transfers from his trust account to his business account for which there are no records to indicate which client or clients were involved and for which there was no indication as to the purpose of those withdrawals. Attorney Scanlan does not refute this testimony.

constituted personal funds belonging to Attorney Scanlan. The referee also found that on October 2, 2001, there was an automatic withdrawal from the client trust account to U.S. Cellular, constituting a personal payment.[17]

¶ 35. As to Count 15, the referee determined Attorney Scanlan deposited six checks, totaling $1000 belonging to H.V.R., into his personal business account rather than his trust account, contrary to former SCR 20.1.15(a). As to Count 16, the referee concluded that Attorney Scanlan commingled personal and client funds by depositing earned fee payments into the trust account and paying a personal bill out of the trust account, contrary to former SCR 20:1.15(a).

¶ 36. With respect to Count 17, the referee concluded by failing to notify H.V.R. of the funds he collected and failing to deliver them, Attorney Scanlan violated former SCR 20:1.15(b), which provides that upon receiving funds or other property in which his client has an interest, a lawyer shall promptly notify the client in writing and deliver the funds as well as render a full accounting on request. The referee found that $3086.67 was still missing.

¶ 37. The referee dismissed Counts 18 and 19, both of which charged violations of SCR 20:8.4(c). Count 18 alleged that by converting $3086.67 belonging to H.V.R., Attorney Scanlan engaged in dishonesty, fraud, deceit or misrepresentation. Count 19 alleged that Attorney Scanlan made telephone transfers of over $48,000 in funds from his client trust account to his personal business account, without identifying and knowing the purpose of the withdrawals and to whom

---

[17] The investigator testified that the payment to U.S. Cellular was $311.71.

the funds belonged, and therefore engaged in dishonesty, fraud, deceit or misrepresentation. The referee found, based on medical testimony, that Attorney Scanlan's failure to properly account for and turn money over to his client resulted from sloppy bookkeeping and ineffective office administration rather than intentional wrongdoing. The referee dismissed Counts 18 and 19.

¶ 38. Count 20 alleged that Attorney Scanlan failed to maintain trust account records and was unable to produce such records for the OLR inspection and unable to identify funds on deposit. Attorney Scanlan agreed, and the referee concluded, that by failing to maintain a complete trust account record, including individual client ledgers, receipts and disbursement journals, and checkbook reconciliation, so that he was unable to produce records for the OLR's inspection, and "unable to identify the ownership of $49,455.23 in funds un-deposited in his client trust account as of December 1, 2000," he violated former SCR 20:1.15(a).

8. The R.P. and R.B. Client Matters

¶ 39. Counts 21 and 22 alleged that Attorney Scanlan violated SCR 22.03(2) by failing to respond timely to the OLR's requests for information. Two clients, R.P. and R.B., filed grievances. Attorney Scanlan did not respond promptly to a number of requests. The referee concluded that this conduct violated SCR 22.03(2), for failing to provide a timely disclosure or response.

B. Mitigating Factors

¶ 40. Attorney Scanlan offered evidence of mental health problems he suffered during the time he committed the rule violations. The referee found that the

numerous counts of misconduct arose when Attorney Scanlan had been suffering from overwhelming personal and psychological problems. The referee determined that during this time, Attorney Scanlan had been treated for depression and had undergone a stressful divorce.

¶ 41. Dr. Patricia Mueller, a psychiatrist and psychoanalyst, testified at the disciplinary hearing that she began treating Attorney Scanlan in June 2003.[18] She diagnosed Scanlan with: (1) major depression, including recurrent major depressive episodes, which left him feeling totally hopeless and immobilized; (2) bi-polar II, which means he was hypomanic for brief periods and depressed the rest of the time; and (3) adult attention deficit disorder, meaning that his emotions interfered with his ability to concentrate. She stated his divorce added to his depression.

¶ 42. According to Dr. Mueller, the combination of the three diagnoses and the divorce interfered with his ability to function as an attorney during the time in question. She testified:

> [B]ecause what he was telling me is the whole sense of it he had to face anything that he had to do, he would feel overwhelmed and put it off and kind [of] avoid and be terribly, terribly anxious, anxious in a way that wouldn't empower him to do anything.

¶ 43. Dr. Mueller further explained that Attorney Scanlan's attention deficit disorder made it difficult for him to focus on details and follow through, and many disciplinary problems resulted from "not responding to

---

[18] Attorney Scanlan received previous mental health treatment but did not present evidence from his former treatment provider.

requests from various official agencies, and I think what happened was he just was overwhelmed."

¶ 44. Dr. Mueller acknowledged that she had not been treating Attorney Scanlan during the time the allegations of the disciplinary complaint arose and she was unfamiliar with the misconduct allegations. She stated, "I think there's something else about funds that were supposed to have been put in another account got put in his account, but he didn't spend them. I'm not sure quite how that worked." Dr. Mueller specifically stated that she had not looked at the charges relating to Attorney Scanlan's handling of the H.V.R. client's collection accounts regarding his functioning with respect to those accounts. She noted that because of a change in his job responsibilities and a change in medications, Attorney Scanlan is not currently at risk.

¶ 45. The referee found: "[Attorney Scanlan] was overwhelmed with detail which dovetails into his own testimony that during some period of time he simply quite [sic] going to the office and stayed in bed while telling himself that he would go into the office later." The referee determined that Attorney Scanlan was remorseful, embarrassed, and willing to take responsibility for his actions.

¶ 46. The referee also found that Attorney Scanlan is now able to cope due to medical/psychiatric treatment, medications, a new job, relocation to Illinois and a lack of family pressures. The referee noted that Attorney Scanlan's responsive pleadings eliminated many factual disputes and the need for independent determination of several rule violations.

C. Referee's Recommended Discipline

¶ 47. In determining the appropriate discipline the referee balanced competing factors. As aggravating

49

factors, the referee noted that Attorney Scanlan's misconduct affected nine separate clients and numerous proven counts of rules violations. Also, Attorney Scanlan had established a pattern of not responding to the OLR, and his license was suspended for not responding timely. Additionally, the referee found there remains a total of $5086.67 owing in client restitution and to the Wisconsin Lawyers' Fund for Client Protection.

¶ 48. As mitigating factors the referee considered that Attorney Scanlan expressed deep remorse and admitted many facts alleged, as well as admitting counts of misconduct. The referee observed that Attorney Scanlan suffered from a variety of mental disorders that interfered with his ability to function as an attorney during the relevant time periods. The referee noted Dr. Mueller's testimony that because of the changes in medication and job duties, Attorney Scanlan is currently not a risk. Also, the referee considered Attorney Scanlan went through a stressful divorce during the relevant time.

¶ 49. The referee found that Attorney Scanlan was an otherwise responsible person who, as a sole practitioner, was simply overwhelmed with the detail necessary to run his office and now that problem is solved by his position as in-house counsel for a business. Further, the referee concluded, by moving to Illinois, Attorney Scanlan no longer is a risk to Wisconsin public. Finally, the referee considered that Attorney Scanlan had no disciplinary history and if he were to be disciplined as requested by the OLR, a reinstatement hearing in the state of Wisconsin would be required which, in the referee's view, would be an unreasonably harsh result based on the facts.

¶ 50. Balancing all these factors, the referee recommended that Attorney Scanlan's license to practice

law be suspended for 180 days, that he pay restitution of $2000 plus interest to the Wisconsin Lawyers' Fund for Client Protection, that he pay restitution of $3086.67 plus interest to a former client, and bear the costs of these proceedings totaling $14,201.16.

## II. DISPUTED ISSUES

A. Count Two

¶ 51. The OLR first challenges the referee's determination that the record fails to support Count 2, which alleged that Attorney Scanlan failed to notify his client R.M, the court and the district attorney's office of his administrative license suspension and inability to represent his client, in violation of SCR 22.26(1). While a referee's findings of fact will not be set aside unless clearly erroneous, conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Carroll*, 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. The question presented is whether the undisputed facts demonstrate a rule violation. This question requires the application of a legal standard to a set of facts, thus presenting a question of law we review de novo. *See In re Disciplinary Proceedings Against Norlin*, 104 Wis. 2d 117, 130, 310 N.W.2d 789 (1981). We conclude the uncontroverted facts demonstrate the violation alleged in Count 2. Accordingly, we overturn the referee's dismissal of Count 2.

¶ 52. SCR 22.26(1) provides that an attorney whose license is suspended or revoked has certain obligations, including, (a) notifying by certified mail all clients being represented in pending matters; (b) advising the client to seek legal advice elsewhere; and

(c) providing written notice to the court and the attorney for each party in a matter pending before the court of the suspension and of the attorney's inability to act.[19] Attorney Scanlan does not dispute the facts underlying his administrative suspension or his failure to comply with SCR 22.26(1).[20] Attorney Scanlan acknowledges he did not provide notice to his client, but argues that the duties enumerated in SCR 22.26(1) do not apply to administrative suspensions. He contends that because his suspension was administrative rather than court ordered, he was under no obligation to comply with SCR 22.26(1).

■

¶ 53. We are unpersuaded. We agree with the OLR that the rule's plain language does not distinguish between administrative suspensions and court-ordered suspensions. Its application to an administrative suspension is consistent with the results in the other cases. *See In re Disciplinary Proceedings Against Nott,* 2003 WI 17, ¶ 10, 260 Wis. 2d 4, 658 N.W.2d 438 (failing to notify two clients of CLE suspension violated SCR 22.26(1)(a)); *In re Disciplinary Proceedings Against Engelbrecht,* 2000 WI 120, ¶¶ 2,9, 239 Wis. 2d 236, 618

---

[19] *See* note 3.

[20] Attorney Scanlan admitted he received a notice from the state bar that his law license would be automatically suspended on November 1, 2002, if he did not pay his dues by October 31, 2002. He did not pay his dues as required and his license was suspended as of November 1, 2002. The referee found that Attorney Scanlan did not appear in court for his client on November 18, because he knew by that time his license had been suspended. His client, R.M., appeared in court unrepresented on November 18 and informed the court her attorney would not be able to appear on her behalf. Attorney Scanlan's license was reinstated November 20, 2002.

N.W.2d 743 (This court approved a stipulation that failure to notify the court and counsel of administrative license suspension for failing to comply with mandatory CLE requirements while counsel of record for a client in a small claims eviction trial violated SCR 22.26(1)(b).). We conclude that the plain language of SCR 22.26(1) encompasses administrative as well as court-ordered suspensions.

¶ 54. Here, the effect of Attorney Scanlan's failure to comply with SCR 22.26(1) was to leave his client unrepresented at a pretrial hearing, resulting in entering her plea on her own without counsel. This result could have been alleviated had Attorney Scanlan complied with SCR 22.26(1) and notified his client, the court and opposing counsel of his inability to represent R.M. due to his administrative license suspension.

¶ 55. Attorney Scanlan points out that a lawyer practicing after administrative suspension may be disciplined under SCR 20:5.5.[21] *See In re Disciplinary Proceedings Against Nichols,* 193 Wis. 2d 295, 207, 532 N.W.2d 712 (1995)(continuing to practice law while suspended for failure to pay dues violates SCR 20:5.5). He also notes that discipline is available under SCR 20:8.4(f).[22] This argument merely demonstrates that an act of misconduct may be addressed by more than one rule. His concession that the continuation of practicing law after an administrative license suspension violates SCR 20:5.5 and SCR 20:8.4(f) fails to demonstrate SCR

---

[21] SCR 20:5.5 states: Unauthorized practice of law. "A lawyer shall not (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in a jurisdiction; or (b) assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law."

[22] *See* note 9.

53

22.26(1) is inapplicable to an administrative license suspension.

¶ 56. Attorney Scanlan further argues that the prompt reinstatement provisions upon compliance demonstrate that SCR 22.26(1) was unintended to apply to administrative suspensions because time sensitive provisions of SCR 22.26(1) would be inapplicable or irrelevant once the lawyer was administratively reinstated.[23] We are not persuaded. To the extent Attorney Scanlan's arguments suggest practical difficulties arising from obligations under SCR 22.26(1) as applied to administrative suspensions, the obstacles to which he refers are not insurmountable. For example, SCR 22.26(1)(d)[24] provides a 15–day window after the effective date of suspension or revocation for an attorney to make arrangements for the temporary or permanent winding up of his practice. This provision indicates that an attorney is afforded a reasonable time within 15 days after the effective date of a license suspension to fulfill his obligations under SCR 22.26(1).

¶ 57. We reject Attorney Scanlan's arguments implying that an administratively suspended attorney's client must fend for herself at court proceedings because the attorney has no duty under SCR 22.26(1) to notify her, the court, or opposing counsel of his inability

[23] In a footnote, Attorney Scanlan also argues it is doubtful that all the lawyers reinstated for failure to pay bar dues fully complied with SCR 22.26(1). We conclude that this argument, unaccompanied by record citation, fails to demonstrate SCR 22.26(1) is inapplicable to administrative suspensions.

[24] SCR 22.26(1)(d) provides that "[w]ithin the first 15 days after the effective date of suspension or revocation, make all arrangements for the temporary or permanent closing or winding up of the attorney's practice. The attorney may assist in having others take over clients' work in progress."

to appear on her behalf. Attorney Scanlan points to nothing in the rules' plain language or the cited authorities to require the conclusion that SCR 22.26(1) applies only to court ordered license suspensions.[25]

B. Count Eighteen

¶ 58. Next, the OLR challenges the referee's dismissal of Count 18, which charged that by converting $3086.67 belonging to H.V.R., Attorney Scanlan engaged in dishonesty, fraud, deceit or misrepresentation contrary to SCR 20:8.4(c).[26] Attorney Scanlan does not dispute that he failed to turn over $3086.67 owing to his client, H.V.R. It is undisputed that these funds have not

---

[25] In a footnote, Attorney Scanlan points out that the OLR does not challenge the referee's dismissal of Count 8, as added support that the OLR erroneously challenges the dismissal of Count 2. Count 8 alleged a violation of SCR 20:8.4.(f) resulting from Attorney Scanlan's court appearance for his client, T.V., after Attorney Scanlan was suspended but before he received notice of the suspension.

Attorney Scanlan's argument does not directly address the distinctions in the facts of these two separate client matters and the distinct rule violations alleged. With respect to Count 8, the referee specifically found that Attorney Scanlan "did not actually receive notification that his license was suspended until *after* he appeared in court" for T.V. (Emphasis added.) In contrast, with respect to Count 2, it is undisputed that Attorney Scanlan had notice of his suspension before R.M.'s court appearance.

Also, in the T.V. matter (Counts 8 and 9), Attorney Scanlan was charged with violating SCR 10.03(6), SCR 20:8.4(f), and SCR 22.03(2). He was not charged with violating SCR 22.26(1), as charged in Count 2. We reject Attorney Scanlan's claim that the OLR's inconsistent positions as to Counts 2 and 8 justify dismissal of Count 2.

[26] *See* note 14.

yet been repaid. The referee concluded, nonetheless, that "while Scanlan violated his duties as to the $3,086.67 to his client" pursuant to former SCR 20:1.15(b), his failure to account for and turn the money over to his client was the result of "sloppy book keeping and generally ineffective administration of his office rather than intentional wrong doing." The referee based this conclusion on Dr. Mueller's testimony that Attorney Scanlan was suffering personal problems as well as major depression, bi-polar disorder II, and adult attention deficit disorder during the time in question.

¶ 59. We conclude that under the circumstances presented, Attorney Scanlan's admitted conduct violates SCR 20:8.4(c) as a matter of law. The application of undisputed facts to a legal standard presents a question of law we review de novo. *See Norlin,* 104 Wis. 2d at 130. In the context of this proceeding, Attorney Scanlan's unauthorized conversion of his client's money to his own use is understood to refer to the unlawful appropriation or misappropriation of the funds.[27] Misappropriation commonly means "to appropriate dishonestly for one's own use."[28]

¶ 60. Although Attorney Scanlan's bookkeeping and office administration were sloppy and ineffective, he admitted that he converted his client's funds to his

[27] *See The American Heritage Dictionary of the English Language* 412 (3d ed. 1992) ("Conversion: The unlawful appropriation of another's property."); *see also The New Merriam-Webster Dictionary* 175 (4th ed. 1989) ("Misappropriate").

[28] *See The American Heritage Dictionary of the English Language* 1153 (3d ed. 1992); *see also The New Merriam-Webster Dictionary* 468 (4th ed. 1989) ("Misappropriate: to appropriate wrongly; *esp.* to take dishonestly for one's own use").

own use. In his post-hearing brief, to his credit, Attorney Scanlan acknowledged that "he violated SCR 20:8.4(c) by converting $3,086.67 belonging to [H.V.R] (Count 18)." The funds remain unpaid. Under the circumstances presented, the undisputed fact of conversion of his client's money demonstrates as a matter of law the element of dishonesty, in violation of SCR 20:8.4(c). *See In re Disciplinary Proceedings Against Cassidy,* 172 Wis. 2d 600, 603–06, 493 N.W.2d 362 (1992); *See also In re Disciplinary Proceedings Against Moran,* 165 Wis. 2d 504, 508, 477 N.W.2d 628 (1991).

¶ 61. Attorney Scanlan, nonetheless, cites *Methodist Manor of Waukesha, Inc., v. Martin,* 2002 WI App 130, ¶ 9, 255 Wis. 2d 707, 647 N.W.2d 409, to support his contention that "a lawyer who mistakenly converted client property would not necessarily violate SCR 20:8.4(c)." The *Methodist Manor* case states that good faith or a mistake is no defense to liability for the tort of conversion. *Id.* Because Attorney Scanlan points to no evidence of good faith or mistake, this case is unhelpful. We reject his argument and overturn the referee's dismissal of Count 18.

¶ 62. To the extent Attorney Scanlan implies his psychological condition is a defense to Count 18, a psychological condition may constitute mitigation of the seriousness of misconduct or of the severity of discipline, if shown to be causally related to the misconduct. *See In re Disciplinary Proceedings Against Sosnay,* 209 Wis. 2d 241, 243, 562 N.W.2d 137 (1997). As we explain later in this opinion, we consider Attorney Scanlan's psychological condition when we address the seriousness of his misconduct in the context of the severity of discipline.

## C. Count Nineteen

¶ 63. Next, the OLR challenges the referee's dismissal of Count 19. Count 19 alleged that Attorney Scanlan made telephone transfers of over $48,000 from his client trust account to his personal business account, without identifying and knowing the purpose of the withdrawals and to whom the funds belonged, and therefore engaged in dishonesty, fraud, deceit or misrepresentation, contrary to SCR 20:8.4(c). The referee dismissed Count 19 finding: "As to count #19, OLR failed to meet its Burden of Proof for the same reasons as discussed in count #18 and therefore I conclude that Scanlan did not engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

¶ 64. The facts supporting Count 19 are uncontroverted. This issue, therefore, involves the question whether undisputed facts constitute a violation, a question of law we review de novo. *See Norlin,* 104 Wis. 2d at 130. The referee found that Attorney Scanlan made numerous telephone transfers from his client trust account to his business account for which there are no records indicating the client or clients involved and for which there is no indication as to the purpose of the withdrawal. At the disciplinary hearing, the OLR investigator's unrefuted testimony showed numerous telephone transfers from Attorney Scanlan's client trust account to his personal account, totaling over $48,000, without any identification of whose funds were taken and the purpose of the withdrawal.

¶ 65. In the decision of *In re Disciplinary Proceedings Against Britton,* 180 Wis. 2d 109, 508 N.W.2d 412 (1993), this court held that the unauthorized use of client funds held in trust constituted conduct involving

58

dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c):

> The Board also argued that, on the basis of the facts concerning Attorney Britton's handling of his client's funds, the court should reach another conclusion of law that was absent from the referee's report: that Attorney Britton's use of client funds held in trust constituted conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of *SCR 20:8.4(c)*. The referee had concluded only that the misappropriation of client funds violated the trust account rule. We agree with the Board and, noting that in his brief Attorney Britton accepted that his handling of the client's funds could constitute a violation of that rule, conclude that his use of client funds violated SCR 20:8.4(c).

*Id.* at 115 (emphasis added).

¶ 66. We conclude that the uncontroverted facts demonstrating Attorney Scanlan's numerous unauthorized transfers from his client trust account constitute conduct involving dishonesty in violation of SCR 20:8.4(c). Therefore, we overturn the referee's dismissal of Count 19.

¶ 67. Attorney Scanlan argues that his admitted failure to maintain appropriate trust account records violated only trust account rules. *See* former SCR 20:1.15(a). He also contends, the "reason OLR did not prove Count 19 is that OLR failed to provide any evidence that the transfers involved client funds or to suggest that the transferred funds belonged to anyone other than Scanlan." Attorney Scanlan's argument does not square with the referee's findings. The referee relied on Attorney Scanlan's sloppy bookkeeping to relieve him of culpability, not on any failure on the part of the OLR to prove that the funds in the client trust account funds did not belong to Attorney Scanlan.

¶ 68. We reject Attorney Scanlan's suggestion that two wrongs make a right. His ongoing failure to maintain trust account records is not a defense to a violation of SCR 20:8.4(c) arising out of numerous unauthorized transfers of client trust account funds to a personal account without identifying whose funds were taken or the purpose of the withdrawals. Consistent with the *Britton* case, we conclude that the undisputed facts of record support a violation of SCR 20:8.4(c), as alleged in Count 19.

D. Discipline

■

¶ 69. Finally, the OLR contends that a 180–day suspension does not adequately address the severity of Attorney Scanlan's misconduct and falls just short of the six-month suspension period requiring a formal petition to reinstate, thus eliminating the need to determine that Attorney Scanlan is fit to practice law in Wisconsin.

¶ 70. The OLR notes the seriousness of Attorney Scanlan's misconduct, pointing out that he kept unearned fees and never did return the fees advanced by a client, necessitating a claim against the State Bar Client Security Fund, (now known as Wisconsin Lawyers' Fund for Client Protection). It also observes that Attorney Scanlan converted his client H.V.R.'s funds, which have not been repaid. The OLR also points out one client who appeared unrepresented at a pretrial hearing had to enter a plea on her own. The OLR further contends that the evidence of Attorney Scanlan's mental health issues falls short of establishing a causal connection to his misconduct and thereby should not be considered. The OLR further argues that while Attorney Scanlan was ultimately cooperative and

expressed remorse for his misconduct, his misconduct is serious and includes numerous rule violations.

¶ 71. Attorney Scanlan responds that the OLR's recommended sanctions are excessive. Attorney Scanlan argues that because the referee found his depression-related illness to be a cause of his misconduct, it should be considered in the mitigation of discipline. He claims that while it would be appropriate to recommend monitoring of his trust account and medications should he return to private practice in Wisconsin, there is no need to impose substantial discipline to protect the public from him.

¶ 72. It is this court's responsibility to determine appropriate discipline and this court may impose discipline more or less severe than that recommended. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686. In imposing discipline, this court considers the seriousness, nature and extent of misconduct, the level of discipline needed to protect the public, the courts, and the legal system from repetition of the attorney's misconduct, the need to impress upon the attorney the seriousness of the misconduct and the need to deter other attorneys from committing similar misconduct. *See In re Disciplinary Proceedings Against Charlton,* 174 Wis. 2d 844, 875–76, 498 N.W.2d 380 (1993).

¶ 73. We conclude that a six-month license suspension is appropriate. In making this determination, we consider the seriousness and extent of Attorney Scanlan's misconduct, which involved nine clients, numerous rule violations, and an extensive time period. In mitigation, we acknowledge his lack of prior discipline, his remorse and ultimate cooperation, as well as the significance of his mental health problems, which are

apparently now being treated successfully. We agree with the OLR, however, that the record is insufficient to demonstrate that Attorney Scanlan's mental health problems were causally connected to each alleged rule violation. The evidence supports a determination that his psychological problems had the effect of immobilizing him, thus indicating a causal connection between acts of omission rather than acts of commission. It is apparent, however, that a significant number of counts were causally related to Attorney Scanlan's illness and personal problems. We further agree with the referee that proofs establish that at the present, Attorney Scanlan appears not to be a risk to the public.

¶ 74. We conclude, nonetheless, that the need to impress upon Attorney Scanlan and other attorneys their obligations under the rules calls for no less than a six-month license suspension, requiring a formal petition to reinstate to demonstrate that Attorney Scanlan is fit in the event he chooses to return to practice in this state. We further conclude, should Attorney Scanlan return to practice in Wisconsin, that his trust account practices and his medications should be monitored quarterly for a period of one year. In addition, Attorney Scanlan is required to make restitution to his client, H.V.R., in the sum of $3086.67 plus interest and to the Wisconsin Lawyers' Fund for Client Protection, in the amount of $2000 plus interest.

¶ 75. Under SCR 22.24(1),[29] this court has the discretion to assess all or a portion of the costs of the

---

[29] SCR 22.24(1) provides: Assessment of costs.

(1) The supreme court may assess against the respondent all or a portion of the costs of a disciplinary proceeding in which misconduct is found, a medical incapacity proceeding in which it finds a medical incapacity, or a reinstatement proceeding and may enter a judgment for costs. The director may assess all or a portion

disciplinary proceedings in which misconduct has been found. *See In re Disciplinary Proceedings Against Konnor,* 2005 WI 37, ¶ 32, 279 Wis. 2d 284, 694 N.W.2d 376. We conclude that the OLR has substantially prevailed in this matter and that it is appropriate for Attorney Scanlan to bear the costs of the proceedings both before the referee and on appeal. Therefore, Attorney Scanlan's motion objecting to costs is denied.

¶ 76. IT IS ORDERED that the license of John F. Scanlan to practice law in Wisconsin is suspended for a period of six months, commencing June 7, 2006. Should Attorney Scanlan return to practice in Wisconsin, his trust account practices and his medications should be monitored quarterly to the satisfaction of the Office of Lawyer Regulation for a period of one year.

¶ 77. IT IS FURTHER ORDERED that within 60 days of the date of this order John F. Scanlan shall provide evidence to the Office of Lawyer Regulation that he has fully paid restitution to client H.V.R., in the amount of $3086.67 plus interest and to the Wisconsin Lawyers' Fund for Client Protection in the amount of $2000 plus interest, or that he has entered into a repayment agreement for the remaining amounts due. If the evidence is not provided within that time, the license of Attorney John F. Scanlan to practice law in Wisconsin shall remain suspended until further order of this court.

¶ 78. IT IS FURTHER ORDERED that within 90 days of the date of this order, Attorney John F. Scanlan shall pay to the Office of Lawyer Regulation the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time,

of the costs of an investigation when discipline is imposed under SCR 22.09. Costs are payable to the office of lawyer regulation.

the license of Attorney John F. Scanlan to practice law in Wisconsin shall remain suspended until further order of this court.

¶ 79. IT IS FURTHER ORDERED that Attorney John F. Scanlan comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.