# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP1603-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Sonja C. Davig, Attorney at Law: <br><br> Office of Lawyer Regulation, <br>   Complainant-Appellant, <br>  v. <br> Sonja Davig Huesmann, <br>   Respondent-Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST HUESMANN

| | |
|---|---|
| OPINION FILED: | December 28, 2018 |
| SUBMITTED ON BRIEFS: | September 26, 2018 |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|  COURT: | |
|  COUNTY: | |
|  JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|  CONCURRED: | |
|  DISSENTED: | |
|  NOT PARTICIPATING: | ROGGENSACK, C.J., did not participate. |

ATTORNEYS:

For the complainant-appellant, there were briefs filed by *Matthew F. Anich*, and *Office of Lawyer Regulation*, Ashland.

For the respondent-respondent, there was a brief filed by *Sonja C. Davig,* Holmen.

**2018 WI 114**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2016AP1603-D

STATE OF WISCONSIN               :          IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Sonja C. Davig, Attorney at Law:**

**Office of Lawyer Regulation,**

   **Complainant-Appellant,**

 **v.**

**Sonja Davig Huesmann,**

   **Respondent-Respondent.**

**FILED**

**DEC 28, 2018**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1   PER CURIAM.   The Office of Lawyer Regulation (OLR) has appealed a report filed by Referee Allan E. Beatty, accepting a stipulation filed by the OLR and Attorney Sonja C. Davig Huesmann[1] in which Attorney Davig Huesmann admitted the

---

[1] Attorney Davig Huesmann is also known as Sonja C. Davig. She has not, however, officially changed the name under which she is licensed to practice law in this state. Consequently, this order will refer to her as Attorney Davig Huesmann. See SCR 10.03(2) and SCR 40.14(3).

eight counts of professional misconduct alleged in the OLR's complaint. Referee Beatty recommended that Attorney Davig Huesmann be publicly reprimanded for her misconduct. The OLR argues that a public reprimand would unduly depreciate the seriousness of Attorney Davig Huesmann's misconduct and that a suspension of her license to practice law in Wisconsin is appropriate.

¶2 Upon careful review of this matter, we uphold the referee's findings of fact and conclusions of law, which were based on the parties' stipulation. We agree with the OLR that a public reprimand is not a sufficient sanction for the misconduct at issue. Rather, we conclude that a 60-day suspension of Attorney Davig Huesmann's license to practice law in Wisconsin is appropriate. In addition, we follow our usual custom of imposing the full costs of this proceeding, which are $10,360.04 as of May 21, 2018, on Attorney Davig Huesmann. The OLR does not seek restitution, and we do not impose a restitution order.

¶3 Attorney Davig Huesmann was admitted to practice law in Wisconsin in 1994. She has no prior disciplinary history. She was formerly a member of Huesmann Law Office, S.C. in Holmen, Wisconsin, where she practiced with her then-husband, Mark Huesmann, until August 2013. Attorney Davig Huesmann currently practices law with Johns, Flaherty & Collins, S.C. in LaCrosse, Wisconsin.

¶4 Huesmann Law Office, S.C. maintained a trust account at Seven Bridges Bank in Holmen, Wisconsin. It also maintained a business checking account and business savings account there.

¶5 On August 15, 2016, the OLR filed a disciplinary complaint alleging eight counts of misconduct against Attorney Davig Huesmann. She filed an answer to the complaint on November 4, 2016. The parties filed a stipulation on October 16, 2017. The following facts are taken from the stipulation.

¶6 On September 13, 2011, Attorney Davig Huesmann entered an appearance as attorney for the estate of R.T. in LaCrosse county. She remained attorney of record for the estate until it was closed on June 7, 2013.

¶7 On June 4, 2013, Attorney Davig Huesmann deposited over $98,000 in the firm's trust account, which included over $68,000 in proceeds from the R.T. estate. Between the time the money was deposited in the trust account and February of 2014, Attorney Davig Huesmann wrote various checks from the trust account and electronically transferred various sums from the trust account to the firm's business account. Many of the electronic transfers from the trust account were not recorded in the transaction register or in any client ledgers. On multiple dates there was less money in the trust account for the R.T. estate than should have been there.

¶8 On February 6, 2014, the final check relating to the R.T. estate was presented for payment, leading to a $13,726.97 overdraft on the trust account. The bank honored that check.

¶9 On February 7, 2014, Attorney Davig Huesmann deposited a $14,000 bank check from a credit union into the trust account.

3

The memo line on the check read "RE: Christopher Perner." Christopher Perner is Attorney Davig Huesmann's current husband.

¶10 On February 13, 2014, another trust account check was presented for payment and resulted in an overdraft in the trust account in the amount of $26.97. That check was also honored by the bank. On February 18, 2014, Attorney Davig Huesmann electronically transferred $100 from the business account to the trust account to cover that overdraft.

¶11 On March 11, 2014, Attorney Davig Huesmann deposited another $14,000 into the trust account. The source of that money was a cashier's check and the remitter was Attorney Davig Huesmann's mother.

¶12 The OLR's investigative review of Attorney Davig Huesmann's trust account records revealed that the transaction register, which was broken down month-by-month, was inadequate. The register did not include the balance in the account after each transaction, nor did it contain a beginning or ending balance for any month. The register additionally failed to identify the source of each deposit, and occasionally it did not indicate the client for whom the funds were being disbursed. Attorney Davig Huesmann failed to record over $19,000 in nine electronic transfers from the trust account to the business account in the trust account transaction register. Several of the dates in Attorney Davig Huesmann's client ledgers were incomplete; she failed to maintain monthly reconciliation reports as required by supreme court rules; she frequently deposited multiple deposit items at one time but the deposit

4

slips did not identify the amount or client matter associated with each deposit item; and the memo lines of most of the checks she disbursed from the trust account did not identify the client matter or the purpose for the disbursement.

¶13 On February 25, 2014, the OLR sent Attorney Davig Huesmann a letter informing her of the investigation into the overdrafts in her trust account and requiring her to provide a written response.  In February of 2015, the OLR filed a notice of motion and motion requesting an order to show cause why Attorney Davig Huesmann's license should not be suspended for her willful failure to cooperate in the OLR's investigation concerning her conduct.  After this court issued an order to show cause, Attorney Davig Huesmann provided information which the OLR deemed sufficient to allow it to continue its investigation, and the order to show cause was dismissed at the OLR's request.

¶14 In January of 2016, the OLR filed a second motion requesting an order to show cause due to Attorney Davig Huesmann's continued willful failure to cooperate in the OLR's investigation.  This court issued a second order to show cause. Attorney Davig Huesmann provided the OLR with some additional information, and the OLR subsequently withdrew its second motion to suspend her license.

¶15 The parties' stipulation set forth the following counts of misconduct, which were alleged in the OLR's complaint:

5

**Count 1:** By converting $13,732.43 belonging to the R.T. estate to her own purposes, Attorney Davig Huesmann violated SCR 20:8.4(c).[2]

**Count 2:** By failing to hold in trust $13,732.43 relating to the R.T. estate, Attorney Davig Huesmann violated current SCR 20:1.15(b)(1).[3]

**Count 3:** By failing to hold $14,677.27 in trust for those eight additional clients, Attorney Davig Huesmann violated current SCR 20:1.15(b)(1).

**Count 4:** By depositing $28,000 in personal funds to her trust account: $14,000 on February 7, 2014 and $14,000 on March 11, 2014 in order to conceal her conversions and failures to hold client funds in trust, Attorney Davig Huesmann violated SCR 20:8.4(c).

**Count 5:** By depositing $28,000 in personal funds to her trust account: $14,000 on February 7, 2014 and

---

[2] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[3] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, 2016 WI 21 (issued Apr. 4, 2016, eff. July 1, 2016). Because the conduct underlying this case arose prior to July 1, 2016, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2016.

Current SCR 20:1.15(b)(1) provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

$14,000 on March 11, 2014, Attorney Davig Huesmann violated former SCR 20:1.15(b)(3).[4]

**Count 6:** By failing to maintain trust account records that complied with the requirements of SCR 20:1.15, including the transaction register, client ledgers, deposit slips, checks, and monthly reconciliations, Attorney Davig Huesmann violated former SCR 20:1.15(f)(1)a., b., d., e.1, and g.[5]

---

[4] Former SCR 20:1.15(b)(3) provided: "No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay monthly account service charges may be deposited or retained in a trust account."

[5] Former SCR 20:1.15(f)(1)a., b., d., e.1, and g. provided:

Complete records of a trust account that is a draft account shall include a transaction register; individual client ledgers for IOLTA accounts and other pooled trust accounts; a ledger for account fees and charges, if law firm funds are held in the account pursuant to sub. (b)(3); deposit records; disbursement records; monthly statements; and reconciliation reports, subject to all of the following:

a. The transaction register shall contain a chronological record of all account transactions, and shall include all of the following:

1. the date, source, and amount of all deposits;

2. the date, check or transaction number, payee and amount of all disbursements, whether by check, wire transfer, or other means;

3. the date and amount of every other deposit or deduction of whatever nature;

4. the identity of the client for whom funds were deposited or disbursed; and

5. the balance in the account after each transaction.

b. A subsidiary ledger shall be maintained for each client or 3rd party for whom the lawyer receives

(continued)

7

trust funds that are deposited in an IOLTA account or any other pooled trust account. The lawyer shall record each receipt and disbursement of a client's or 3rd party's funds and the balance following each transaction. A lawyer shall not disburse funds from an IOLTA account or any pooled trust account that would create a negative balance with respect to any individual client or matter.

d. Deposit slips shall identify the name of the lawyer or law firm, and the name of the account. The deposit slip shall identify the amount of each deposit item, the client or matter associated with each deposit item, and the date of the deposit. The lawyer shall maintain a copy or duplicate of each deposit slip. All deposits shall be made intact. No cash, or other form of disbursement, shall be deducted from a deposit. Deposits of wired funds shall be documented in the account's monthly statement.

e.1. Checks shall be pre-printed and pre-numbered. The name and address of the lawyer or law firm, and the name of the account shall be printed in the upper left corner of the check. Trust account checks shall include the words "Client Account," or "Trust Account," or words of similar import in the account name. Each check disbursed from the trust account shall identify the client matter and the reason for the disbursement on the memo line.

g. For each trust account, the lawyer shall prepare and retain a printed reconciliation report on a regular and periodic basis not less frequently than every 30 days. Each reconciliation report shall show all of the following balances and verify that they are identical:

1. the balance that appears in the transaction register as of the reporting date;

2. the total of all subsidiary ledger balances for IOLTA accounts and other pooled trust accounts, determined by listing and totaling the balances in the individual client ledgers and the ledger for account fees and charges, as of the reporting date; and

(continued)

8

**Count 7:** By making electronic (Internet) deposits to and disbursements from her trust account from at least January 2, 2013 through February 6, 2014, Attorney Davig Huesmann violated former SCR 20:1.15(e)(4)c.[6]

**Count 8:** By failing to respond to multiple letters from the OLR and by providing incomplete and contradictory responses, necessitating the filing of two motions for orders to show cause why her license should not be suspended for willfully failing to cooperate with the OLR's investigation, Attorney Davig Huesmann violated SCR 22.03(2)[7] and SCR 22.03(6),[8]

---

3. the adjusted balance, determined by adding outstanding deposits and other credits to the balance in the financial institution's monthly statement and subtracting outstanding checks and other deductions from the balance in the monthly statement.

[6] Former SCR 20:1.15(e)(4)c. provided: "A lawyer shall not make deposits to or disbursements from a trust account by way of an Internet transaction."

[7] SCR 22.03(2) provides:

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[8] SCR 22.03(6) provides: "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

9

which are enforced under the Rules of Professional Conduct via SCR 20:8.4(h).[9]

¶16 The parties stated that the stipulation may be admitted into evidence without any supporting testimony. The parties further stated that the referee may file a report reciting or incorporating the factual portions of the stipulation as the referee's findings of fact and the referee may recite or incorporate the stated counts of misconduct as the referee's conclusions of law. The parties stated there was no stipulation as to what specific discipline the referee should recommend.

¶17 Following the filing of the stipulation, the parties submitted briefs regarding the appropriate discipline to impose for Attorney Davig Huesmann's misconduct. The referee issued his report on January 12, 2018. Although the OLR had sought a one-year suspension of Attorney Davig Huesmann's Wisconsin law license, the referee concluded that a public reprimand was an appropriate sanction.

¶18 The referee identified a number of aggravating factors present in this matter: there were multiple offenses; Attorney Davig Huesmann initially failed to comply with the OLR's investigation; Attorney Davig Huesmann had substantial experience in the practice of law; and client funds were

---

[9] SCR 20:8.4(h) provides: "It is professional misconduct for a lawyer to fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

involved. The referee also identified multiple mitigating factors: an absence of a prior disciplinary record; an absence of a dishonest or selfish motive; personal problems; a timely rectification of the consequences of the misconduct; a full and free disclosure and ultimate cooperation with the OLR proceeding; Attorney Davig Huesmann's character and reputation; and her chemical dependency. The referee said he primarily focused on three mitigating factors: (1) Attorney Davig Huesmann had no prior disciplinary history; (2) her personal problems and chemical dependency, which the referee found contributed to her misconduct, have been addressed and rectified; and (3) her personal problems led to her professional problems, particularly concerning her law practice's financial circumstances.

¶19 The referee praised Attorney Davig Huesmann for addressing substance abuse and mental health issues and noted that she submitted an affidavit showing that she had successfully completed a two-year contract with the Wisconsin Lawyer Assistance Program (WisLAP). The referee said Attorney Davig Huesmann also productively addressed other mental health issues with personal counseling, as evidenced by an affidavit she presented from a counseling service.

¶20 The referee found that Attorney Davig Huesmann's professional problems arose after the dissolution of her marriage and then the dissolution of her law practice partnership with her former husband. The referee said it was not surprising that cash flow problems developed as Attorney

11

Davig Huesmann was left alone to keep her law practice afloat. The referee commended Attorney Davig Huesmann for finding employment in a well-established and professionally managed law firm that has the procedures and personnel in place to deal with trust account and other financial issues.

¶21 The referee said there is no question that Attorney Davig Huesmann's violations are serious given that the trust of clients was violated and large amounts of money were involved. In addition, the referee noted that Attorney Davig Huesmann failed to respond in a timely manner to the OLR's inquiries, necessitating the issuance of two orders to show cause. The referee also pointed out that some of the misconduct alleged in the OLR's complaint occurred after Attorney Davig Huesmann had found a safer port with her new law firm. In addition, the referee rejected Attorney Davig Huesmann's claim that her trust account problems were due to poor record-keeping. The referee said the multiple transfers from the trust account to the business account that occurred in 2013 and 2014 were not simply mistakes but were intentionally done either by Attorney Davig Huesmann or by someone else under her supervision.

¶22 While the referee said that the OLR made reasonable arguments why a suspension of Attorney Davig Huesmann's license would be appropriate, the referee ultimately concluded that a suspension "would be more punitive than productive." The referee opined that Attorney Davig Huesmann has already taken the steps necessary to protect current and future clients from a repetition of her mistakes and has already absorbed the lesson

of the seriousness of her misconduct. The referee noted that there have been many instances in which this court has imposed public reprimands for trust account related misconduct, and he ultimately concluded that a public reprimand was an appropriate sanction for Attorney Davig Huesmann's misconduct.

¶23 In its appeal, the OLR argues that a public reprimand is not a sufficient level of discipline. The OLR notes that Attorney Davig Huesmann, by virtue of the stipulation, admitted to five trust account violations, two misconduct counts of dishonesty, and one count of willfully failing to cooperate with the OLR's investigation into her conduct. The OLR points out that one of the SCR 20:8.4(c) counts, which Attorney Davig Huesmann admitted, was converting for her own purposes over $13,000 belonging to an estate, and the other SCR 20:8.4(c) count, which she admitted, was depositing $28,000 in personal funds to her trust account in order to conceal her conversions and her failures to hold client funds in trust.

¶24 The OLR argues that some of the alleged mitigating factors identified by the referee to justify the sanction recommendation were either erroneous or unsupported in the record or by case law. For example, the OLR asserts that the referee's identification of "absence of a dishonest or selfish motive" as a mitigating factor is clearly erroneous given the fact that Attorney Davig Huesmann stipulated that by converting over $13,000 belonging to the R.T. estate to her own purposes she violated SCR 20:8.4(c). In addition, the OLR says the referee's conclusion that there was an absence of a dishonest or

13

selfish motive is inconsistent with the referee's other statements that Attorney Davig Huesmann's conduct violated the trust of her clients and that the multiple transfers from the trust account to the business account were not simply mistakes but were intentional. The OLR argues that to the extent the referee recommended a public reprimand based on an absence of dishonesty, that premise is erroneous and the referee's resulting recommendation is overly lenient.

¶25 The OLR goes on to argue that there is insufficient credible evidence in the record for the referee to have made a finding regarding Attorney Davig Huesmann's character and reputation. The OLR notes the referee fails to state what he believes Attorney Davig Huesmann's character or reputation are, or what basis exists for his conclusion. The OLR says since any mention of character and reputation evidence is entirely absent in the stipulation, the referee's finding must have been gleaned from the affidavits that Attorney Davig Huesmann filed after the OLR had already filed its reply brief with respect to sanctions.[10]

---

[10] The OLR notes that the referee's scheduling order required Attorney Davig Huesmann to submit to the OLR's counsel the affidavits she proposed to file with the referee by October 27, 2017. The OLR was then to have seven days to make a request to the referee that it be allowed to conduct discovery, an investigation, or make its own submissions in response to the affidavits. The OLR points out that Attorney Davig Huesmann did not submit her affidavits until after the OLR had already filed its sanctions brief, depriving the OLR of the opportunity to conduct discovery, investigate, or make its own submissions.

¶26 The OLR notes that Attorney Davig Huesmann submitted an affidavit dated December 1, 2017, attaching a copy of a medical record from a counseling service in which an unidentified writer states, referring to Attorney Davig Huesmann, "she is very well liked in her work and has a good reputation." The OLR says there is no indication the unidentified writer had any information about Attorney Davig Huesmann's reputation beyond what Attorney Davig Huesmann herself reported. The OLR says the comments in the exhibit are hearsay from an unknown person who has an unknown source and are thus not reliable or admissible evidence.

¶27 The OLR also points out that Attorney Davig Huesmann's sanctions brief to the referee stated, "Sonja's practice largely consists of strongly advocating for her family law clients. She has a reputation of being a very dependable attorney for her clients." In addition, the OLR notes the sanctions brief says that Attorney Davig Huesmann has "an exemplary reputation." The OLR says this is argument, not evidence, and there is no testimony or other evidence in the record to support those assertions. Accordingly, the OLR argues there is insufficient credible evidence in the record to support the referee's reliance on Attorney Davig Huesmann's character and reputation as mitigating factors.

¶28 Next, the OLR argues that Attorney Davig Huesmann's claimed personal problems, including chemical dependency, should not have been considered as mitigating factors because the record does not show those issues caused her misconduct. The

15

OLR notes that Attorney Davig Huesmann's November 17, 2017, affidavit stated that in 2010 she had first been prescribed an anti-anxiety medication; that she suffered from a situational substance abuse problem for which she eventually sought treatment in 2015 through individual counseling and by participation in WisLAP; and that her anxiety and depression affected her ability to conquer all facets of everyday affairs while managing a law practice. The OLR says that Attorney Davig Huesmann's affidavit, besides being vague as to the pertinent dates, never claims that her condition caused her professional misconduct, nor did her sanctions brief make that claim.

¶29 The OLR also says that the paper identified as a medical record from a counseling service attached to Attorney Davig Huesmann's December 1, 2017 affidavit, does not say whether she had a chemical dependency or mental disability that caused her misconduct. In addition, the OLR says the December 1, 2017 affidavit attached a letter from WisLAP which also did not indicate whether Attorney Davig Huesmann had a chemical dependency or mental disability that caused her misconduct.

¶30 The OLR says this court has clearly stated that causation must be found in order for a medical condition to mitigate the sanction in a disciplinary proceeding. See, e.g., In re Disciplinary Proceedings Against Scanlan, 2006 WI 38, ¶62, 290 Wis. 2d 30, 712 N.W.2d 877; In re Disciplinary Proceedings Against Mandelman, 2014 WI 100, ¶54, 358 Wis. 2d 179, 851 N.W.2d 401.

16

¶31 The OLR argues that the statements in Attorney Davig Huesmann's affidavit and her sanctions brief regarding her personal problems are so vague with respect to dates that it is impossible to tell what problems, if any, coincided time-wise with her misconduct, much less whether her misconduct was causally related to her personal problems. The OLR asserts that since there was not sufficient credible evidence in the record to establish that one or more of the eight counts of misconduct were caused by Attorney Davig Huesmann's chemical dependency, anxiety, or depression, those claimed medical issues should not have been considered mitigating factors by the referee.

¶32 The OLR further argues that when the referee determined the appropriate sanction he failed to distinguish conversion of client trust fund cases from other less egregious trust account violations and apparently considered trust account related misconduct cases as a group. The OLR says that Attorney Davig Huesmann's serious failings with respect to holding client funds in trust and her dishonest professional misconduct demand a sanction greater than just a public reprimand.

¶33 The OLR notes that this court has imposed suspensions for misconduct far less serious than at issue here. See, e.g., In re Disciplinary Proceedings Against Bartz, 2015 WI 61, 362 Wis. 2d 752, 864 N.W.2d 881 (parties stipulated to a 60-day suspension imposed for five counts of misconduct, including one SCR 20:8.4(c) violation. The attorney had a previous private reprimand and several administrative suspensions); In re Disciplinary Proceedings Against Schuster, 2006 WI 21, 289

17

Wis. 2d 23, 710 N.W.2d 458 (parties stipulated to a nine-month suspension for six counts of misconduct, including one SCR 20:8.4(c) violation. The attorney had one prior 90-day suspension and one prior consensual private reprimand).

¶34 The OLR says while Attorney Davig Huesmann's purported addressing of some of her personal issues may lend sympathy to imposing a suspension less than the one year originally recommended by the OLR, it strenuously argues that imposing only a public reprimand would unduly depreciate the seriousness of the misconduct at issue, would be inconsistent with past precedent, and would fly in the face of this court's need for discipline to deter other attorneys from committing similar misconduct.

¶35 Attorney Davig Huesmann argues that the referee correctly determined that a public reprimand is an appropriate sanction for her misconduct given the circumstances surrounding her actions. Attorney Davig Huesmann argues she suffered from a situational substance problem for which she eventually sought treatment in 2015. She says in looking back at her past conduct, "it is clear that the anxiety and depression had affected Sonja's ability to conquer all facets of everyday affairs while managing a law practice, working to the best of her ability for her clients as well as adapting to raising two young children as a single parent." She argues she continues to excel in her substance abuse recovery and says she has made tremendous strides with her anxiety and depression issues.

18

¶36 Attorney Davig Huesmann says she has a history of being active in her community. She says the last several years have been very difficult for her and that she has extreme remorse for violating supreme court rules. She says the misconduct at issue here is not who she is, and she argues her mistakes should not define her but rather should refine her and make her a better attorney and better person in the future. She says given the totality of the circumstances, the referee's recommendation of a public reprimand is an appropriate sanction.

¶37 A referee's findings of fact are affirmed unless clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶38 We adopt the referee's findings of fact, as they appear in the stipulation, and we further agree with the referee's conclusions of law, also set forth in the stipulation, that Attorney Davig Huesmann violated the supreme court rules set forth above.

¶39 With respect to the appropriate level of discipline, after careful review, we agree with the OLR that a public reprimand is not an adequate sanction for the misconduct at issue here. Attorney Davig Huesmann admitted to eight counts of misconduct, including two counts of violating SCR 20:8.4(c), which states that it is professional misconduct for a lawyer to

19

engage in conduct involving "dishonesty, fraud, deceit or misrepresentation." We agree with the OLR that the referee's conclusion that there was an absence of a dishonest or selfish motive is at odds with his statement that Attorney Davig Huesmann violated SCR 20:8.4(c) and is also inconsistent with his statement that "the trust of clients was violated. Large amounts of money were involved."

¶40 As the OLR noted, this court has clearly stated that a medical or psychological condition will not be considered in mitigation of discipline unless the condition is explicitly found to have caused the misconduct. See Mandelman, 2014 WI 100, ¶54; Scanlan 2006 WI 38, ¶62. While Attorney Davig Huesmann is to be commended for addressing her personal and substance abuse problems, there is no showing in this record that those problems were the cause of her professional misconduct, and they should not be considered as mitigating factors. Similarly, there is no showing in this record, beyond Attorney Davig Huesmann's own self-serving statements, that her character and reputation should be viewed as mitigating factors. In addition, although Attorney Davig Huesmann did ultimately cooperate with the OLR's investigation, she did not do so until she had been served with two separate orders to show cause threatening a license suspension if she did not fully respond to the OLR's inquiries.

¶41 To be sure, there are some mitigating factors present in this case. Attorney Davig Huesmann has no prior disciplinary history. It appears that she has taken up practice in a law

20

firm where she is not responsible for managing the trust account. As we have noted, she is also to be commended for taking steps to address her personal and substance abuse problems and it appears that she is genuinely remorseful for her misconduct and is determined not to repeat it.

¶42 The OLR had sought a one-year suspension of Attorney Davig Huesmann's license to practice law in Wisconsin. We conclude that a one-year suspension would be excessive. However, we agree with the OLR that something more than a public reprimand is warranted in view of the serious misconduct at issue here. On balance, we conclude that a 60-day suspension of Attorney Davig Huesmann's license is an appropriate sanction. We find the case of In re Disciplinary Proceedings Against Bartz, 2015 WI 61, which was cited by the OLR, to be somewhat instructive.

¶43 In Bartz, the attorney stipulated to five counts of misconduct, including one count of violating SCR 20:8.4(c). Attorney Bartz had previously been privately reprimanded and also had been administratively suspended on three occasions, once for nonpayment of state bar dues and failure to file a trust account certificate, once for noncompliance with continuing legal education requirements, and once for noncooperation with an OLR investigation.

¶44 The amount of the trust account conversions in Attorney Davig Huesmann's case were much more significant than in the Bartz case. However, Attorney Davig Huesmann has no prior disciplinary history. Although no two disciplinary

21

matters are ever identical, we conclude that, as in Bartz, a 60-day suspension is an appropriate sanction for Attorney Davig Huesmann's misconduct. In addition, we deem it appropriate, as is our normal custom, to impose the full costs of this proceeding on Attorney Davig Huesmann.

¶45 IT IS ORDERED that the license of Sonja Davig Huesmann, also known as Sonja C. Davig, to practice law in Wisconsin is suspended for a period of 60 days, effective February 8, 2019.

¶46 IT IS FURTHER ORDERED that within 60 days of the date of this order, Sonja Davig Huesmann, also known as Sonja C. Davig, shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $10,360.04 as of May 21, 2018.

¶47 IT IS FURTHER ORDERED that Sonja Davig Huesmann, also known as Sonja C. Davig, shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶48 IT IS FURTHER ORDERED that compliance with all conditions with this order is required for reinstatement. See SCR 22.28(2).

¶49 PATIENCE DRAKE ROGGENSACK, C.J., did not participate.

22